May it please the court, Jeffrey Dickerson for the appellant. I'd like to reserve a minute and a half for rebuttal if I may. You may. Just watch the clock. I will, your honor. The district court below, as I read his opinion, melded, conflated the analysis. The issue raised by the motion for summary judgment on the FMLA claim was relatively simple. Elements one and two were conceded, and element three, causal connection, was the issue upon which the motion was made. That, therefore, triggers our obligation to come forward with evidence to demonstrate a genuine issue of material fact on causation. We did this in part by showing temporal proximity. The district court disregarded that, citing a Seventh Circuit case that said you can't use temporal proximity alone to create an inference, and also noted that there was a time lag between the time he took FMLA leave in October-November of 1998 and the date of the suspension in June of 1999, failing to construe the evidence in a light most favorable to us in at least this sense, and that is that when he took the polygraph in January of 1999, that particular investigation had concluded. And in Colesalter, the court noted, this panel, this court noted that the savvy employer will possibly delay meeting out of discipline in order to create a temporal gap to diminish that inference. Here it fails because the June 1999 suspension is based upon an investigation that was concluded in January of 1999, and there's no explanation in the record for that delay. Therefore, as of January of 1999, that's the date we look to in order to assure ourselves that there's sufficient temporal proximity back to November and early December, even, when this issue was discussed, when he came back from FMLA leave, when he was told we can violate your rights all we want. That's a very short gap of time. So, therefore, there is temporal proximity sufficient to create a reasonable inference of a causal connection. How does that connect up with the subsequent acts? It does in a subject matter type of way, because by the district court's own opinion, the termination was based upon a series of suspensions and reprimands. And that includes, necessarily, this reprimand we're talking about and the suspension that goes with it. Therefore, by the district court's own logic and by the defendant's own logic, there is a subject matter connection relating all the way back to January of 1999. Therefore, we establish a causal connection, a genuine issue of material fact, with temporal proximity and subject matter connectedness, tying the thread of time together, from 1998 all the way until the termination in November of 2001. Now, ordinarily, the next question would be, has the employer come forward and produced evidence sufficient to say there's a legitimate non-retaliatory reason? But the employer did not put that forward specifically in the motion. The employer did not assert that. The employer asserted causal connection was the issue upon which it was seeking Rule 56 relief, not that it had a legitimate non-discriminatory, non-retaliatory reason. Nevertheless, we addressed the employer's rationale, and we pointed out to the district court the evidence which demonstrates a genuine issue of material fact there. This is where the district court went awry, because the district court conflated and stated, given the volume of suspensions and reprimands, it is clear that the city had a legitimate interest in terminating the plaintiff. And that does a disservice, Your Honors, to our case. On de novo review, this Court should look at the record and analyze more carefully our showing of pretext. But before we even get to pretext, don't we have evidence of direct evidence of discriminatory intent, which under Reese gets us by summary judgment regardless of whether we show pretext or not? We have the statement. We can violate your rights all we want in close temporal proximity to his having taken FMLE leave and then the ensuing events. So we submit that's direct evidence, but even if that isn't direct evidence, we've shown in terms of pretext that there's a genuine issue of material fact on the employer's legitimate non-discriminatory reason. With respect to the first suspension in June of 1999, the one we were just referencing, the evidence in the record through the declaration of the plaintiff is that he denies giving that inmate cigarettes and that it was an accepted practice to act upon inmate tips without going to the supervisor. Considering that evidence in the light most favorable to Mr. Zajnick, there's an issue of fact for trial on that suspension and whether or not it's valid. With respect to all of these that he didn't grieve, they make a great point of that, but I don't know where it says you have to grieve in order to contest the merit of the discipline on a motion for summary judgment in a civil rights case. Is your argument then boiled down to the notion that because of the statement that was supposedly made in January, that anything that any disciplinary action taken thereafter for some period of time is inherently suspect, and therefore that's enough to get past summary judgment? Well, I think it is, Your Honor, for the reasons I've stated in terms of the connectedness by subject matter. In other words, instead of looking from that date forward, go back to the termination and look backward in time, and you see that the employer's own rationale links it by subject matter. If the first one hadn't happened, the second one wouldn't have happened, the third one wouldn't have happened, the fourth one, he'd still be working there. That's our theory. But also this ---- I'm sorry. Tie that back to the FMLA leave? Well, temporarily. But I understand temporarily, but how does one ---- what's the first leap you made there? You lost me on that. He takes FMLA leave. Yes, I understand. He comes back. That investigation is ongoing. He's ---- there's issues about the polygraph. He finally takes the polygraph in January of 1999. That investigation is concluded. In the context of taking that polygraph is when the day he's back to work, he's called on the carpet for not going to the polygraph that was canceled by the polygrapher. Right. So additionally, to answer your question further, the showing of pretext plus the direct evidence I've discussed also supplies the evidence sufficient for a reasonable factfinder to conclude that there's a connectedness. In other words, the showing of pretext is evidence of discrimination. With respect to the second automobile accident, remember they said there were three? Well, the third one or the second one was not a subject of discipline, therefore, should not be considered. The first one is where he hit the rock in the road, and I believe that was in November of 2000. And the transcript from the unemployment security hearing that's in the record, part of our excerpts, unobjected to below, demonstrates that the lieutenant herself testified that there's a one-year rule. In other words, if you're going to look at accidents as a basis for discipline or anything, you can't go back more than a year. And the problem for the employer here is they went back more than a year. In November of 2001, they looked at accidents that had happened more than a year before. And if you look at that transcript, you'll see exactly what we're talking about. I got that admission out of Lieutenant Moult's testimony.  And at least there's an issue of fact as to whether or not that's a legitimate basis for the termination. The third accident, again, we have the one-year rule that's been violated. I think another important fact is that just prior to this, now this is in November of 2001. In August of 2001, the most recent thing about driving that has happened, his supervisor, who's aware of these prior accidents, gives him a standard rating on his performance evaluation for driving, a standard. I think that's an important fact. The other thing I think is important is that same supervisor investigated and responded to this very third accident that led to his termination, and he testified, excerpts of Record 415, he testified that he did not think that that accident was a basis for termination. The other issue is that he tried to influence the statement of one of the witnesses to that accident. But, again, construing the evidence in a light most favorable to us, is there not an issue of fact when we look at NHP requested him to get that statement? In and of itself, the obtaining of the statement, apart from the other accidents, which can't be considered any way we maintain, but apart from that, the obtaining of the statement in and of itself is not terminable according to the lieutenant. That's an excerpt of Record 351. The supervisor himself questioned the credibility of that witness when he investigated. The supervisor conducted the investigation for the Department of Zenyuk going to the witness and getting the statement, and he questioned her credibility. And I asked him, well, did that make you question everything she said? And he said yes, and that's an excerpt of Record 419 to 420. I know you're going to go through, but you're going to run out your clock if you're going to just go through the record. All right. Two more points. I'm aware of that, Your Honor. Thank you for reminding me. Two more points is that the appellant testified that he exerted no influence and did not follow her around. Taking all of that together, there's an issue of fact whether he did anything wrong in obtaining this statement. Then we have the shifting reasons. The reason in writing for the termination is that he failed to appear at the pre-termination hearing, and that's proven at Excerpt from Record 369. So we have another reason. Is it the accidents? Is it the witness? Or is it the failure to appear? They're all over the map. That creates an issue of fact. This should go to a jury. Thank you, Your Honor. Thank you. Melanie Bruchetta on behalf of Carson City. The issue on appeal, as Mr. Dickerson stated, is that they disagree with the fact that the district court found that Mr. Zinyak failed to establish a prima facie case of retaliation on behalf of Carson City. And the reason the district court found that way was because it reviewed Mr. Zinyak's personnel file, which showed a significant number of violations of general orders. The first of which, Mr. Zinyak disputes, is the one that began the investigation in September of 1999. Prior to Mr. Zinyak taking leave, prior to Mr. Zinyak even notifying the sheriff's department that he was going to need leave. And I think it's important to remember, too, Mr. Zinyak only took one month of leave under FMLA. So it wasn't a huge amount of time, and there was no reason for the sheriff's department to even be concerned about that amount of time. That aside, the investigations or Mr. Zinyak's actions began in June of 1998, when he abused his power as a deputy sheriff and ran a criminal history for one of his friends on an opponent for a Story County sheriff position. And it's interesting that that criminal history landed in the hands of a local reporter. Then in August of 1998, again, prior to Mr. Zinyak taking leave under FMLA, he engaged in a conversation with an inmate at the Carson City Sheriff's Department, an inmate he was supervising. He started to ask her about dirty cops within the department. She went along with this conversation because she knew that she was getting cigarettes and lighters in exchange for information that she really knew nothing about. Then an outside agency, the Carson City Sheriff's Department wasn't even the agency that investigated his conduct, was called in in September of 1998. They began the investigation, and unlike Mr. Dickerson's belief, this investigation wasn't concluded until April of 1999, and that's reflected in the records. Douglas County didn't conclude their investigation on Mr. Zinyak until April of 1999, approximately four to five months after his leave under FMLA. Douglas County concluded that there were violations of the general orders, and one of which was a very serious violation, and that was the fact, and this is what got Mr. Zinyak in trouble all along, that he investigated things outside of his regular duty without notifying his supervisor. Mr. Zinyak was terminated not only for his third automobile accident, but also for What do we make, though, of the statement that, if we accept the facts favorable to Mr. Zinyak, that he was told in January that they could violate his rights any way they wanted? If you accept that statement, although I disagree that that statement was even proved, because there's no testimony from the sheriff, it's just Mr. Zinyak saying that that's what the sheriff stated. That we can violate your rights all we want. I guess that's just part of the evidence. And if you find that that statement was true, I still don't think, because the investigation into Mr. Zinyak's conduct hadn't been concluded yet, that there were any violations of any general orders at that point in time. Well, does it create a tribal issue, though, as to motivation and intent? Your argument is that this investigation predated any of this. That's correct. That this pops up at midpoint, or at least in the course of it. So it really doesn't have anything to do with the having taken leave. But how do we resolve that as a matter of summary judgment as opposed to a jury question? Well, I think the district court resolved it by finding that there was no evidence that the sheriff even made that statement. And even if he had made that statement, there's no evidence to support the conclusion that Mr. Zinyak's rights were violated because he took leave. The city supported its position based on the fact that Mr. Zinyak had a long history of disciplinary problems. This history didn't just begin in June of 1998. No, the record makes that clear. Right. So Mr. Zinyak was a liability to the department. He was involved in three motor vehicle accidents. And another thing, too, this isn't the sheriff saying, Mr. Zinyak, you came back from leave, your shoes aren't shined. Or, Mr. Zinyak, your uniform isn't pressed. These are serious violations of general orders that he's been warned about before. And then in December of 1999, Mr. Zinyak requested to go back into the patrol division. He had been there previously and voluntarily agreed to go back into the jail because he couldn't quite make it in the patrol division. So the sheriff agreed to transfer him back into patrol and try again to see if he could make it. So in December of 1999, he goes back into patrol. In April of 2000, there are eight documented driving problems that Mr. Zinyak has while in the field training officer program. He's warned that if he doesn't correct his driving, he's going to be transferred back to the jail. They even ask him to go see an eye doctor, which he does, and the physician says, I don't see anything wrong with your eyes. Yet in November of 2000, as Mr. Dickerson pointed out, Mr. Zinyak's dispatched to a call. He's told that people are placing large objects in the middle of the roadway. He admits that he wasn't looking in the middle of the roadway when he went to this call and he hit a large object. He stated, I was shining my spotlight over to the left side of the road. He caused damage to the vehicle. He's suspended for two days. That suspension then ran in conjunction with a 20-day suspension he received for engaging in associations with ex-felons in the community, not notifying his supervisor that he was doing this. He claims he was doing it to use them as informants. He didn't catalog them as informants. The sheriff's department, once again, didn't know he was doing these investigations because he didn't notify his supervisor, and so he receives a 20-day suspension for, again, violating general orders, one of which is investigating duties which are not part of your regular job without notifying your supervisor. Then in April of 2001, I believe, Mr. Zinyak backs into a patrol car while on duty. He wasn't suspended for that. He actually didn't receive any discipline. And then in November of 2001, a short time after the April accident, Mr. Zinyak, while on duty, fails to yield the right-of-way in an intersection, causing an accident. And the accident alone, and I have to go back one second, the rules clearly state that if the accidents occur within 18 months, not 12 months, but 18 months within that time period, you are subject to suspension or termination. But it wasn't merely the accident alone that caused Mr. Zinyak's termination. It was the fact that he went out and investigated his own accident, again, in violation of the general orders stating that you need to notify your supervisor if you're investigating things outside your regular duties. And at the arbitration hearing, highway patrol said, we never would have told him to investigate his own accident. And other sheriff's deputies found it quite interesting that he was investigating his own accident. And the arbitrator held in favor of his termination. In sum, Mr. Zinyak was a liability to the department. There has been no showing that the Carson City Sheriff's Department acted in retaliation for Mr. Zinyak taking one leave under FMLA, one month of leave under FMLA. As a matter of fact, there's been no showing that those individuals who even supervised Mr. Zinyak and wrote him up for violating general orders knew that he even took a month of leave. I have nothing further to add. Okay. Thank you. I'll give you a minute to reply. Your Honor, just a couple of points. The one-year rule is testified to by Lieutenant Moultz at Excerpt for Record 39697. I'd refer the Court to that to show that even if it's somewhere 18 months, there it's 12 months. That creates an issue of fact. I'm assuring that most favorably to us. I don't have anything to add other to my ask the Court to please reverse and remand with instructions for further proceedings. Thank you.  Thank you. The case disargued is submitted. Thank you for the argument. Okay. The next case on calendar is Hallowell v. Greyhound Lines, which has been submitted. Therefore, we'll call Salter v. Washington Township Health Care. Good morning, Your Honor. It's Janelle Bell for Nina Salter, appellant in this case. We want to retain five minutes for rebuttal. Okay. You'll watch the clock. Your Honor, it's our contention that the district court is not in favor of the
judges: B. Fletcher,fisher, Roll